Ms. Dionne, how do you pronounce your client's name? Chase Dralle Dralle. Okay, good. Thank you. Alright, so you've reserved two minutes for rebuttal, so that gives you eight out of the gate. The floor is yours. Thank you, Your Honor. May it please the Court, Kathleen Dionne for the appellant Chase Dralle. This appeal challenges the procedural and substantive reasonableness of a sentence that the district court imposed upon Mr. Dralle of 30 months. This was an upward variance of the guidelines range of 12 to 18 months and is 167% of the high end of the range here. It's also significantly higher than the average sentence that is imposed in these types of cases. There are three grounds in which we are claiming error. The first is that the sentence was based upon uncharged and unproven allegations. This relates to an alleged group assault that occurred at a gas station a few days before the sentencing here. This conduct was not charged, was not admitted, and was not proven by a preponderance of the evidence. Well, but it wasn't objected to. I mean, defense counsel, you know, basically admitted it, said, I read in the riot act, this was terrible. I mean, the police report, the fact of the incident was all discussed when he was first presented on the violation of his bond. And then at sentencing again, there was no suggestion that it didn't happen or that the details were different from what was represented. So, Your Honor, I first start with the fact that the court indicated that this was not going to be a factor that he would consider at sentencing. I don't agree that defense counsel at the sentencing admitted the conduct that occurred, although I was not the defense counsel at the sentencing, so I'm just surmising from the record as to what her intent was. But it seemed to me that her statement was so vague, it could have covered a wide variety of her conversations with what she read the riot act to the defendant about, which could include, for example, Your Honor, hanging out with people in which an incident occurred, or not focusing on things that he should be focusing on, putting himself in a situation where his bail could have been revoked. But here, there was no evidence that was submitted to the defendant prior to the actual sentencing occurring, that this would be an issue at the sentencing. Well, I mean, why? I mean, courts are certainly free to consider conduct that takes place prior to sentencing while a person is on release, right? Courts can consider conduct that occurred prior, but here... The government made it clear that this was a basis for a high end of the guideline sentence, right? The government made, I would consider passing references to this as part of its presentation for its sentencing position. However, here, there was nothing that was submitted to the defendant in advance, such as a pre-sentencing report or an indication that this would become an issue at the sentencing. Well, I mean, the police report and the violation report was available to your client, both at the time of the revocation of the bond and at sentencing, right? They were available to defense counsel and the client. However, it was not indicated that that was going to be relied upon by the sentencing court, which would be a reasonable assumption by defense counsel at that time. I have to say, as somebody who sentenced people, still sentences people, I can't imagine why anybody would think, oh, I won't consider that what happened just a few weeks before sentencing. I think it was reasonable, Your Honor, because all we had here was the probation officer's certification that there was an underlying police report alleging this conduct, but there's no other evidence that this conduct actually occurred. The police report was or was not provided when he was detained? The defense counsel said at the bail revocation hearing, I believe that she had a copy of the police report but had difficulty reading it, which occurred right before the sentencing. Was there any indication that the district court had looked at the police report or is the district court relying completely on the probation officer's description of the police report? No, Your Honor, we actually don't even really know exactly what the court was relying on. We only know when it read its recitation of what its understanding was of what occurred during the, what the allegations were during the incident. And, in fact, the court, when reciting what it believes to be the allegations, repeatedly says this is what has been alleged, this is what has been alleged, this is what has been alleged. It doesn't indicate that it's making factual findings based upon what occurred there. It did not, it says there was a video, but it had not indicated it reviewed the video. And the probation officer, in its submission to the court, also did not indicate that the probation officer reviewed the video. So we're talking about the indicia of reliability here, which is why I think it was reasonable for defense counsel to assume this would not be a significant portion of the sentencing hearing, was because there's no other evidence other than these unsubstantiated allegations in a police report that, which contains hearsay, which then was... But none of it was denied, right? I'm sorry? Was some of this, did your client deny this? He neither denied nor admitted what occurred, which was... Right, but I mean, his bail was revoked on the basis of that report, and then it was brought to the attention of you, I mean, of your clients, of the government, and of the court in connection with sentencing, right? It was one of two bases that the magistrate judge used to revoke his bond, which was not a proceeding that was ruled over by the district court that had sentenced him, yes. But there was no, other than the allegations, which are based upon the hearsay evidence here, it would have been extremely unreliable evidence, and there was no other presentation of evidence with anything the court could rely on with any sort of reasonable degree of reliability here. I'm not sure why it's unreliable. You have the victim or the complaining witness who spoke to the police, and that's part of the police report, and then you have a video which is represented to have been consistent with the complainant's report, and nobody asked for hearing, and nobody disputed facts. That would have been easy to do, which is judge. You can't. This didn't happen. It didn't happen this way. My guy was just minding his own business and asked for a light, and then the other guy slugged him, but there was no suggestion of that. There was no suggestion that defense counsel addressed that, but I would also say, Your Honor, at the initial part of the hearing, there was no indication that the court was going to rely on this substantially, and especially almost entirely. Well, but certainly by the time the sentencing was announced, it was pretty clear that the judge was all over this, and there wasn't a request to, oh, judge, you got it wrong, we want a hearing. Yes, Your Honor, that's true, which is why we're moving under plain error here, because there was not an objection to that. So, I mean, it seems to me by the time sentence was imposed, your client and your predecessor were fully aware that the judge was relying on this, and viewed it as very relevant to the need to deter your client, and so that would have been an opportunity to say, whoa, whoa, whoa, time out, we want a hearing, or we disagree with facts. Your Honor, that certainly could have occurred, and it didn't occur in this case. And what did occur is, in fact, that your predecessor basically said, yep, it shouldn't have happened, I read him the riot act, and it won't happen again, basically. While she did say that, I don't necessarily agree, Your Honor, that she was exactly admitting that what had occurred there, what was alleged to have occurred. Well, she wasn't saying it was false. I guess that's true. That is true, Your Honor. Well, she was also saying that my client's in a bind because he can't address this because he doesn't want to prejudice himself in the state proceeding. So, I mean, I think I understood her to say, or him, I'm not sure, say we're not going to be presenting evidence on this, but why couldn't counsel have asked to see the video? Because at this point, the court's relying heavily on the notion that this video is corroborative. That's coming from the probation officer saying that the police report, which is in front of us, asserts that the officer who wrote the police report viewed that video and believed it to be corroborative. Why not ask for the video? I don't know, Your Honor, why she did not ask for the video. I mean, she did not ask for the video, but also the video was not before the court. So to the extent that she was trying to prepare for the court was certainly relying on it. The court was relying upon hearsay statements of the probation officer that the hearsay statements in the police report were accurately, or that the Trumbull Police Department had reviewed the video. But is there anything in the record to suggest that that's not the case, that the video disproved the characterizations of the police or the complainant or the probation officer? There is nothing in the record that indicates that the defendant either admitted or disagreed with those statements. But is there anything to say, oh, well, the video shows that it didn't happen the way the complaining witness said, or that my client was just minding his own business? No, Your Honor, the defense counsel did not say that, but the video is also not in evidence before the court either for her to be able to do that. I know, but you're asking us to remand on the possibility that maybe there's something in a video that presumably you or others can get that might contradict what's in the report but might not? That's what you're asking us to do? I'm asking you to remand, Your Honor, because the court relied on, almost entirely on basing a significantly upward variance here for the defendant based upon evidence that he did not have but relied upon when he made the sentencing. Was the client ever charged in connection with this incident? No, Your Honor, he hasn't been charged to this day in connection with it. All right. Were there other things you wanted to get to? I know we've kind of focused on one aspect of your argument, but I'll give you a minute or two if there's something else you wanted to cover. Yes, thank you, Your Honor. And so our second reason here is that the court relied on the co-defendant, Mr. Bagley's conduct, which we also argue is uncharged conduct here. That would be unfair to attribute to my client, Mr. Drahle. The court indicated that the co-defendant's conduct gave context to how he would view my client's conduct here, but there is nothing that really connects what occurred. There's no evidence that my client even knew about what happened with Mr. Bagley's situation and the shootings that had occurred. And thus, our argument is that there's nothing that the court could have relied on here that would have taken this case outside of what the guidelines were already created here to guide courts with what would be an appropriate sentence. Well, I took the district court to be suggesting that, you know, there are straw purchases and there are straw purchases, and there are sources of firearms and there are sources of firearms. And this source was a particularly pernicious one because this is a person who is selling to basically felons and selling to people who are committing crimes, that these guns are being used for a bad purpose. It's different than an unlicensed, you know, sale of a firearm that is, you know, from a cop or a relative or something like that. If that's the case, would that be a legitimate distinction? Your Honor, I think the issue is here that there's no evidence that Mr. Drahle even knew that. So I think to the extent that a court could use that as context to increase the guidelines range here or to give an upward variance from the guidelines range here, that would not apply in this case because there's no evidence that Mr. Drahle had any knowledge of why this source of an illegal firearm creates more danger than any other source of an illegal firearm. Well, except that, no, it would seem to me it's different than buying a gun from a relative or somebody you know from high school as opposed to somebody who, you know, is a street dealer. Your Honor, I think that's correct. But I also think the sentencing guidelines here weren't created just because – that might have been a mitigating factor with the sentencing guidelines here. I mean, the sentencing guidelines here are about just the illegal purchase of a gun. And so the source of the gun, I think, does not necessarily play, especially when you're not aware of the fact that your source has other violent – may have other violent conduct in his past, would in any way make this purchase of a gun rise outside of what the normal sentencing guidelines were here. Which then, Your Honor, sort of leads into our argument here that the sentence here was shockingly high for the conduct that was actually exhibited. And I think a good way of looking at that, Your Honor, is the fact that the sentence here was the equivalent of sentencing someone who was a level six criminal history when Mr. Jolly was a level one criminal history. It was so significantly higher than what the guidelines range is here. And other than relying on the conduct that the court considered from the very unreliable – or from the probation officer's report, which contained within it multiple layers of hearsay, which is we covered – But the courts can consider hearsay, and I haven't seen anything to suggest that it's unreliable. And I don't think you have either. You're saying that maybe it was unreliable, but you haven't said that there's anything that actually does demonstrate the unreliability of it. Well, I think, Your Honor, we have cited the cases, and I'd point you to the Padilla case, which talk about generally the inherent fact that police reports, which contain hearsay, should not just be presumed to have a significant issue of reliability that the court can rely on to make factual findings without anything more. And the cases talk about needing testimonial evidence or some sort of documentary evidence, something to support what had occurred here. We've come back, I guess, to this issue again. The district court should have had a hearing even though nobody wanted one or asked for one. I just don't think the court, without having any evidence presented by the government or the probation office adding an amendment to the pre-sentencing report that the defendant could respond to, I don't think the court should have considered it at all. I don't think there should have been a hearing unless the government was going to proffer more evidence on that. I think the court should have considered it at all. All right. Well, you've reserved some time for rebuttal. We'll now hear from Mr. Gresham. Thank you, Your Honor. Can I sit right, Mr. Gresham? Yes, Gresham. Thank you. May it please the Court, my name is Kenneth Gresham. I'm representing the government in this matter. Contrary to defense counsel's arguments, the district court's sentence of 30 months' imprisonment followed by three years of supervised release was both procedurally and substantively reasonable. There was no error, much less plain error. As to the physical altercation that has been discussed. Let me start with the other one first. I wanted to ask you some questions about the second issue. Would the government agree that if, in fact, the district judge had increased his sentence because his co-defendant had been involved in two shootings prior to his purchase of the gun, that that would have been procedurally improper? The government didn't argue, didn't even argue, whoever was below, didn't make that argument, right? That's correct, Your Honor. So the judge couldn't have considered it that way, right? That would be plain error. So what I would say to that is that the district court, the record here, when you look at the joint appendix. Before we get to the record, I'm just asking you, if a judge said, I'm going to increase your sentence because your co-defendant was involved in two shootings prior to you purchasing the gun, that would be plain error, yes or no? Yes, Your Honor. So this is what the district court said. The district court went through the two shootings, mentioned what they were, and then said, yes, you're being convicted of a nonviolent offense, but the court has to consider the nature and circumstance of your offense and does so with the greater context of Mr. Bagley's activities, the activities of your co-defendant. So clearly the district court is saying he considered that and is referring to the activities of Mr. Bagley and referred to the two shootings. So why should we not think that he considered it in the way that would be erroneous? Because when you look at the record, Your Honor, the district court clearly stated that it understood that Drahle was convicted of a nonviolent offense, but that when analyzing the nature and circumstances of the offense, the co-defendant's Bagley's activities provided context for the seriousness of Drahle's participation in gun trafficking by underscoring the dangers of trafficking illegal firearms. This court has recognized that a district court may situate a defendant's crime in context by considering the harm. He wasn't, Mr. Drahle wasn't trafficking in firearms. He purchased one, as your friend on the other side pointed out. There was no allegation that he knew what Mr. Bagley was involved in, right? I think the judge asked you, is he involved in gang activity? And the AUSA answered, no, he's not involved in any gang activity that we know of, right? He wasn't involved. The indication that he was aware of what Mr. Bagley was doing more generally about shootings or anything like that, right? So I disagree that Drahle was unaware that Bagley was involved in trafficking firearms. No, shootings, shootings, violence. The idea that you're facilitating violence somehow by purchasing a gun from this guy. Right. So there's no record that Mr. Drahle understood that Bagley was involved in specific acts of violence. However, I think what the court was trying to explain was that why we have gun trafficking laws. It's to prevent these types of, the logical conclusion is that. You cite the ones, or when someone was the one case, I forget what circuit it was, where someone had, from Indiana, had brought 17 guns into Chicago and sold them into the streets. And the judge there said exactly what you're saying. It's like, look, you're flooding, you know, we have all this violence in Chicago, and this is why. Because people are illegally flooding the streets with guns. But that's not, that's not what we have here, right? We have someone purchasing one gun, right? Well, we have him purchasing one gun, but we also have text messages where Drahle and Bagley are directly acknowledging the wrongfulness of gun trafficking. And so we have, we have Drahle, we have Drahle. I don't understand why this is different than any other purchase of a gun. This would be a reason to escalate his sentence. Guns are, guns can be used for shootings. That could be true any time you purchase a gun. The reason to increase the sentence would be that somehow he knew, first of all, that there's some evidence that he was going to use that gun in connection with the shooting once he got it. There's no evidence of that, right? So what I would say is that there's, the district court did not upward vary because, solely because that Mr. Bagley was involved in violence or that Drahle knew that he was involved in violence. In fact, the district court clearly states on the record that Drahle was convicted of a nonviolent offense and that he understood that. The two reasons he gave was the gas station incident and Mr. Bagley's, the greater context of Mr. Bagley's activity. So we don't know how much the increase was attributed to one or the other. Those were the two reasons given for the above guideline sentence, right? There were other additional reasons as well, Your Honor. The defendant's communications with his co-defendant Bagley, where they talk about the fact that Drahle is not allowed to purchase a firearm. Drahle wanted to go into the store with Mr. Bagley. If you look at, wanted to go into the store with Mr. Bagley, Mr. Bagley informs Drahle that, you know, you're not allowed to do this. You can't touch any of the firearms here. You need to make it look like that I'm the one purchasing it for myself and that I'm not purchasing it on your behalf. So the district court took great issue with that and said that, you know, you knew what you were doing was wrong. The communications, the text messages between you and your co-defendant show that. And then when you have that on top of the fact that only three weeks before Mr. Drahle was sentenced, he gets into this altercation in Trumbull, Connecticut, that on top of the fact that the court found that this was a very serious offense and it was highlighting the fact that violence is a logical conclusion of gun trafficking. We think that that was a plain error. Do we know how much it affected his sentence or not? How do we know how much, if we believe that was a plain error, how much it affected the sentence when he said this is one of the reasons? So I disagree that there was. I understand you disagree with that, but I'm saying, we're saying like, you know, he had all these other reasons. We don't know how much, if that was a plain error, how much that played into it, right? So what I'm saying is that the record does not support the contention that the district court varied upward because a co-defendant was involved in violence. What I'm saying is that the district court was merely highlighting that violence is a logical conclusion of gun trafficking, and that is why we have gun trafficking laws to protect the public from violence. Can I ask you about the gas station incident? If, in fact, and I know there's an issue of whether or not it was properly disputed or not, but you would agree that if it was disputed that the judge would have had made a finding by preponderance of the evidence that all of this uncharged conduct occurred in the way that he ultimately described on the record. Is that accurate? Yes, there would have been a finding if the standard would have been preponderance of the evidence. However, the record is clear that there was no, that first of all, that the defense counsel was put on notice that this would be an issue. Whenever someone is on release, their conduct on release is always an issue at sentencing. In fact, Does the government's view that the defense counsel conceded all of the details of what happened during that gas station incident by not objecting? Is that? It's the government's position that defense counsel knew that this was going to be an issue and that there's no That's an issue of notice, though, right? That's an issue of notice. I'm pretty excited about the issue of notice. They had notice, and Judge Sullivan pointed out, even if they didn't know in the beginning, they knew at some point the judge was going to rely heavily on that. The next question then becomes, did the judge have to make a finding by preponderance of the evidence that all the details, it wasn't just some general reliance on that. The judge spelled out that basically that it was an assault and a robbery, right, that Mr. Drawley spit in the face of the complainant, beat him up. He and his cohorts tried to rip an earring off his ear and steal his wallet. So that's what the judge ostensibly was sentencing him on, right? That was part of the judge's sentencing decision, yes. But there was no finding that's been proven by preponderance of the evidence, either through the police report. It doesn't appear the district court reviewed the video because he kept saying that there's a video out there, there's a video out there. At one point he even said the parties agreed to the video, which was not accurate. But the district court was relying on something but didn't make a finding. As a matter of fact, at the very end when he says he's relying on it, it says, as alleged by the government, your activities on August 5th as alleged by the government. So it seems like he's just accepting all the details, right, without any finding of reliability, as Judge Sullivan pointed out. You could have additional reliability, but it doesn't appear the judge believed that he needed to make a finding on this, maybe because there was no objection. The district court was relying on the petition that was submitted by probation, which articulated what was in the police report and the fact that the police report was corroborated by video. It is often the case, and it was perfectly reasonable for the district court to rely on a filing by the probation office. They do it all the time. That's what the PSR is, right? In a PSR, that's one form of it. But district courts often rely on probation officers when they discuss the conduct of an individual while they're on release. Here there was a petition. It spelled out what was alleged in the police report and the fact that a complainant made a statement and that it was corroborated by video. And the defense counsel never raised any objection to any of the facts. No, but as Judge Robinson pointed out, it was an unusual situation where it hadn't been charged yet. The defense counsel said, I told him not to speak about this today because of problems that could occur if he addressed this. So it was a difficult position to say if, for example, there was some type of altercation, but not every detail was accurate, like pulling the ring off the ear or robbing the person, or maybe there was some provocation that led to it, that it was a difficult thing to start saying, well, this happened, but this didn't happen. So that's part of the dynamic of this, right? But when looking under the plain error standard, it was not clear and obvious that there was any error in the petition because the defense counsel at no point raised any issue with the facts. If there was a proper objection, it would have been plain error not to make a finding, right? Even if there was plenty of evidence in the petition, the judge has to make a finding. I conclude by preponderance of the evidence that this happened in this way because of the police report, which has initial liability because somebody reviewed the video and it appeared, as the petition said, it appeared to be consistent with the complainant. But that would have to be done, right? Well, the district court would have to find by preponderance of its initial liability. The failure to do that would be plain error. But what I'm saying is that the court had sufficient information to find that that petition was wrong. But did it make the finding? I think that's the question, right? It recites a bunch of allegations. It attributes them to the government. I don't know. I think it probably really means the police officers and, you know, the state police officers. And then it says, and on this basis I'm sensing you, does it ever say, even if we assume that you can get over the initial reliability hurdle, you still have to get to preponderance? And does the court – are we to infer that the court concluded by a preponderance of the evidence that these allegations were in fact true, even though the court didn't say that? Yes, Your Honor. Based on the court's recognition that what was in the petition was based on a police report that was police officers interviewing a complainant who was at the scene that was assaulted, and then also that the petition states that the complainant's statements to the police were corroborated by surveillance video. Right. And we don't know whether the surveillance video corroborated that they were both in the same place at the same time or whether it corroborated the details of the earring being pulled out of the ear and all of the other stuff, right? And we've got this case law that sort of suggests we don't just blindly assume that what police officers put in a police report accurately describes things. They're doing their best to serve the public, but they have a viewpoint. Okay. So how do we – how do we get to a preponderance based on the probation officer reporting that the police officer assured, you know, assured us through the police report that the video corroborated this, when we don't actually even know what that means, what it means to corroborate this? Well, given what was in the – we're still – I still would like to reiterate that we are under the plain error review here. And given that there was no pushback, it's – It's interesting you say there's no pushback. I mean, interestingly, this gentleman's mom emphasized multiple times during her part of it and some person, he hasn't – he hasn't been – he hasn't – he's been charged, but he hasn't – or he hasn't even been charged with it. He hasn't been charged. He hasn't had an opportunity to prove himself. I mean, it's – it was not an unspoken reality in that proceeding that these, at this point, were simply allegations that hadn't materialized into anything beyond that. Well, what I would say to that, Your Honor, is that Drale himself at the sentencing hearing chose to give a statement to the district court in which he appeared to express remorse to the district court and stated that his five days in jail had given him time to think about himself and that he regretted his decision. At no point did Mr. Drale or his lawyer say that what the allegations in that petition are incorrect. Right, because we know why, right? He hasn't been charged and he's got to – he's got to protect the privilege. But expressing regret – I mean, the thing is it's not just this happened exactly the way it was described or nothing happened at all, right? There's a spectrum between those two of an altercation, who initiated it, how brutal it was, et cetera, et cetera. And we're now relying on a third-hand account of what happened and an assurance of an officer that a video corroborates it. And that's it. I just – I'm trying to figure out how to get some comments on that. I would say that under the plain error review, though, it has to be clear and obvious that there was something wrong here. And that's not the case. The defense counsel knew that this was going to be an issue. They knew it was going to be an issue at sentencing because, one, they start out the hearing. At the very beginning of the sentencing, the counsel states, the defendant is in custody, we will be addressing that, I'm sure. Can I stop you for a minute? I mean, bail was revoked on the basis of this report. There was a finding. Is that correct? That's correct. There was a finding of probable cause. And violations of supervised release are routinely granted – are supervised releases routinely revoked on the basis of reports like this, right? That's correct, Your Honor. Standard is probable cause in that context, isn't it? Right. No, no. I mean, it's preponderance of the evidence and a violation of supervised release. Is that correct? Of supervised release. Correct. Here, the magistrate made a specific finding of probable cause to revoke the bond. Right. Probable cause. In the context of this case, the finding that was made was made under probable cause. Right. That's correct, Your Honor. So what the government's position is that there was sufficient notice for defense counsel to say that we don't agree what's in this police report. We want to have a hearing on it before the district court considers it. And they did not do that. So we're under the plain error review here. It's our position that when you look at the petition, the fact that it is stating what was in police reports, police reports that were provided to defense counsel, and that – And certainly the court. Well, the court was – the district court was relying on the petition, which was reiterating what was in the police reports, and the fact that the police reports were – that the complaint and statement to the police was corroborated by surveillance. He's relying on the assertion by the officer who wrote the police report that it was corroborated by video. Yes, in the petition. Right. It's relying on the police report and the corroboration. Well, but again, saying it's relying on the corroboration suggests that the court had in front of it the corroboration. What the court has in front of it is an assertion reported by the probation officer that the police officer said it was corroborated. That's correct, Your Honor. Okay. The district court's relying just on the petition. And so when we talk about the indistrict of reliability, that's clear here. District courts often rely on a probation officer's assertion as to the conduct of an individual while they're on release. So we're talking about conduct that happened only three weeks before the sentencing. It was perfectly reasonable for a district court to take that conduct into account. Defense counsel knew that it was going to be an issue. They acknowledged it. Defense counsel, you know, talked about meeting with her client and how she read him the Riot Act. She talks about at the very beginning saying that the defendant is in custody. We will be addressing that, I'm sure. And, in fact, the district court made it a point to tell Mr. Drawley that, you know, when you pled guilty, I told you that your conduct while you were on release was going to factor into my decision. So when we look at the plain error review standard, the fact that there is no notice, I think is a big issue for the defense here. So seeing that there's no other questions, I'll rely on what I have on the record. Thank you. We'll now hear from Lise Dionne for two minutes of rebuttal. Thank you, Your Honor. When talking about the reliability of the probation officer's report, I think the second sentence of the probation officer's petition here is extremely important as to when we consider how reliable this was. It says, at that time, about when the Trumbull police had informed the U.S. Probation Office about the incident, at that time Trumbull Police Department advised that the matter was under investigation and that they would provide more information once obtained. So when we talk about the reliability here, I think in part we should look at this in the context of this incident wasn't even fully investigated yet when the court used this to vary so highly above the sentencing guidelines in this case. All right. But if preponderance of the evidence is what is required and the evidence is the admittedly hearsay statement of a police report that lays out the complaining victims' representations of what happened, and nobody disputes that, your view is that that's not enough to establish, by preponderance of the evidence, the facts that the court relied on? Yes, Your Honor. And I also think... So there has to be a hearing is what you're saying? I'm not saying that... I don't think that the case law supports that in every case there needs to be a hearing, but what I think is that there has to be some other reliable evidence that's before the court which the probation could have submitted, which the government could have submitted, and none of that was done. I mean, there's a report of what happened, and nobody's saying that's wrong, and the court has to nonetheless sort of do its own investigation. I don't think the court needs to do an investigation, but I think to reach the probable cause standard... I'm sorry, the preponderance of the evidence standard, the court needs to have before it evidence that has more reliability than the court did here, especially, Your Honor, when we look at how far the variance was in the context of what the guideline sentence is here. The case law also says that when we're looking at a significant variance here, the reliability of the evidence that's before the court is even more important. Nobody challenged the reliability, I guess. I mean, you're not even saying that this is wrong based on subsequent investigation, right? I'm not saying it's wrong, Your Honor, but that's in part because we're limited to the record that's before the court here, and the record before the court is that, you're right, nobody challenged specifically, other than the statements of Mr. Jolly's mother, but no one admitted that conduct either. And I think when we talk about notice, when defense counsel has a petition that says, well, we're still investigating this incident, and there's no other evidence for her to rely on, I mean, the government here has assumed readily that what is before the court is the probation officer's petition, but the court doesn't even say that's what it's relying on in this case. So I think this is all very problematic for supporting the court's decision to vary upwards, especially by the degree that it did in this case. All right. Well, we will reserve decision. Thank you both. Thank you, Your Honor.